Good morning. My name is Noemi Ramirez and I'm the attorney for the respondent, Davison Porta-Forbes. This case came up on appeal from the immigration judge's decision. The BIA streamlined it and affirmed the judge's decision without a decision. The first point that was brought up by the immigration judge was that she found an adverse finding in the credibility of Mr. Porto. The first incidents that were brought up during the hearing was that Mr. Porto worked as a custom officer in Colombia and during his time in employment from 1985 to 1989, he had stopped and found four main, he had seized four main cargos of drugs. In his application he was asked why did he only mention two. At that time he stated that in his application he only named the two big ones, the ones that he thought started the problem. But in truth it was a total of four that he seized while he was on his employment. The other issue was his identification ID badge, which he had submitted to prove that he was a custom officer. During the hearing he submitted an event badge with two affidavits stating that he was a custom officer. The immigration judge found that not to be credible because the badge was in some way, because it didn't specifically say custom officer, instead it said that he worked in the administration of the customs. Suppose we grant you that the first three of the four grounds on which the immigration judge made the mixed findings. It's the first time I've seen that phrase used. Mixed findings of adverse credibility. The first three grounds, the number of shipments of drugs and customs, the threats and the nature of threats and the dates upon which he became a custom officer, the shipments arrived and death threats were made. Suppose that all three of those do not have substantial evidence in the record to sustain the credibility findings. So far I'm going away. Right. But. Then take the evidence about the transformer explosion that was attempted to kill the petitioner. Let's suppose that the IJ finds that that lacks credibility and affects the credibility because he never mentioned that in his application. He didn't mention it in his supplemental application. He knew about it in 95. He didn't add it to a supplement 98. And it comes out full blown at the hearing in the year 2000. What's wrong with that as a basis for an adverse credibility finding? Well, it's like he stated in in the hearing was that he didn't realize it until after the fact. But but but he did realize it in 1995. Right. And then he had a chance to supplement his application by an affidavit in 1998. And he didn't mention it. Is there some explanation? He was certain that he was the target of a transformer explosion murder attempt in 95 because the drug cartels were after him for being an honest customs officer. And then he becomes uncertain of it in 1998 when he fills out his affidavit in supplementary form. Why does he become uncertain of it in 98 and revert to certainty in the year 2000? I believe the hearing was in 99. You know, I believe, you know, once again, it was just that he wanted to make sure and wanted to have the complete evidence. What evidence did he get between 95 and 98, which cast doubt so he wouldn't say anything in the supplemental affidavit? And what evidence did he get between 98 and 99, the hearing which gave him the fortitude to make the claim again? Well, I believe also that he had found the also the newspaper article where a custom officer was killed. And that pretty much reinforced his belief that he had been targeted. And as he stated in the hearing, that it wasn't until looking back and he realized that his supervisor was living beyond his means that he realized that he was probably also a supporter of the drug cartel. What about that? What of that explanation compels the IJ to determine that this testimony was credible? Well, the test is that the IJ or we have to be compelled to find that the IJ was wrong. What compels us to say that the IJ was wrong on the credibility finding on the transformer explosion? On that on that finding. Yes. Alone. I would argue just that on the transformer alone, it would be that he knew that this was his last opportunity to come clear with the entire with the entire testimony. I mean, that's an explanation now. But why was why are we compelled to accept it in the face of the IJ's finding? Well, also, even if the transporter transformer incident was, let's say, not mentioned or if we take that off from his testimony, there is enough evidence on the other testimony that he gave to be able to find that the fear of persecution if he had to return back to his country. Now you're getting away from the transformer as being a real death threat. You're going to the other three elements of a threat of future persecution. But I don't think that you've answered Judge Nelson's question. Why are we compelled to disagree with the immigration judge as to the assessment of the transformer incident as being a basis of adverse credibility? You mentioned to me that he had found a newspaper article that another customs officer was killed. When did he find that? What year? It was submitted. It was submitted in the hearing in 1999. So I want to say that it was shortly before. Before the hearing. And he learned the supervisor was living beyond his means. So he was on the take. When did he learn that? Well, he realized that just when he was looking back and he saw that he saw the newspaper article at the same time. Yeah. Where the the the custom officer was. Where in the record are those two? Where in the record can we verify or make exact your claim that that was found in 1999? I don't believe the record specifically states it. I know that the the article was submitted for the first time at the mayor's hearing in July of 1990. What was the date of the article? It doesn't. I don't believe it states it on the. But I don't. Yeah, I don't remember the date of the article. If we accept the IJ's adverse credibility finding as to the transformer, there's to say we put that to one side. Do we because it's a, quote, mixed finding, which, again, I'm a little puzzled by. I mean, we're all a little puzzled by what the IJ actually meant by mixed. Do we accept the rest of it is true? And if we do accept the rest of it is true, is there enough there to compel a finding that he's entitled to asylum? Yes, I believe that there is enough there. The death threats, the actual confrontation with the drug cartel, the country conditions submitted into evidence. All of that is sufficient to find a well-founded fear of persecution. If we have to return. What do we do with the finding that the IJ made that's been 10 years? And they probably forgotten about this gentleman. Well, the drug cartel is still in the country conditions. They're still very strong. Why don't we hear from the government and then we'll give you a minute in rebuttal. Good morning, Your Honor. May it please the Court. My name is Isaac Tamblyn. I represent the United States of America. Welcome back to the night, sir. Thank you. In this case, as it has been mentioned, the IJ made, even though he used the term, the terminology may be unique from the decision, he made a negative adverse credibility finding with respect to the petitioner for two reasons. First, there were omissions and plausibilities in petitioners and inconsistencies between the petitioner's statement, his testimony and his asylum application. There was also a negative adverse credibility finding with respect to the petitioner's failure to provide corroborating evidence. The immigration judge also touched on the merits and found that the petitioner had not demonstrated that the incidents he offered rose to the level of persecution and even if it had rose to the level of persecution, he had not established that it was on account of a protected ground. Looking first at the relevant issue before this Court, as Judge Nelson has mentioned, is whether or not the Court would be compelled to a finding contrary to that of the immigration judge. Now looking at the credibility issue, as was mentioned, I think the transformer incident is key. This was the only incident in which the petitioner was purportedly directly harmed. As it has been stated, it was omitted from the 1994 asylum application. It was omitted from the 94 asylum officer interview. As it has been pointed out, he somehow came to this conclusion in 1995 based on an article. So the first thing the first issue I'd like to point out with this change of he came convinced of that in 95 based on an article. Is that based on what Petitioner's counsel said? Yeah. Is that the same article which surfaced in 1999 for the first time? Oh, well, actually, I thought that that's what Petitioner's counsel was saying. I would say even if that were true. I'm not sure where that came from. And I don't I didn't hear her say that the article came out in 95. OK, but then I'll take that back. I misspoke. I misinterpreted what she said. But he did conclude that in 95. My question was, why didn't he include it in the 98 supplemental affidavit? I'll get to that. I would say, first of all, looking at the change of part 1995, first, it wasn't based on any new information. When Petitioner talked about why he made this change, all the information he had, he had before he left Columbia. So there is this question about what happened in 1995. If we then go to 1998, Petitioner now Petitioner has counsel. He is, sadly enough, he's following a supplemental declaration to support his claim. And yet the only incident in which he is directly harmed, somehow that which is purportedly led to being hospitalized is not there. And Petitioner offers no reason for that. The immigration judge found in addition to the omissions, there were implausibilities. The immigration judge talked about the fact that Petitioner was able to return to Columbia for 27 days without incident in his asylum application. He talked about the fact that when he testified, he said he went back to Columbia to to get his children. But in his asylum application, and he made that at page 95 in the administrative record. But in his asylum application, he talks about the fact that he went to make arrangements for rental properties. He was there for 27 days. And he mentions that he did so so that he wouldn't be a public burden on society if the asylum application was granted. In other words, he was able to go back and procure money so he wouldn't be on welfare or whatever when he came to the United States. But when he testified, somehow he went to get his children and he was in hiding. And as the immigration noted, it seems difficult if he is being targeted that he could go back and sell his house and do whatever he was doing with his rental property in the open. And yet when he's testifying, he's hiding out his mother-in-law's trying to get his children. And the fact that he stayed for a number of days. In addition to the other issues about the number of drug shipments, the dates that he was employed, the immigration judge properly found that there was a negative credibility finding because Petitioner failed to offer corroborating evidence. In this case, Petitioner is not alleging that the government was the persecutor. Now, it is important when it's mentioned that he did not provide information that he was actually a customs officer. This is not some minor incident. In his asylum application, Petitioner argued, Petitioner stated that he was a clerk, that he was selected to do this, to seize these drugs. But when he testified, he's now saying that he is a customs officer. It seems reasonable that he would be able to provide something from the agency to corroborate his assertions. He says that he's reported. Well, it's usually failure to provide corroborating evidence isn't a strike unless it's readily available. And the failure to provide it is unexplained. What does the record show about the readily availability of the information you're talking about? Well, with respect to this, Petitioner was asked about why he could not provide, for example, something to corroborate his employment. And with respect to his employment, police reports, hospital records, because he was not being persecuted by the government or there was some reason to believe that he could not get hospital records or he couldn't get police reports, certainly that seems something that it's reasonable that Petitioner could have, it was really, he easily could have gotten that from any of those sources. And there's nothing in the record and nothing in his allegations that would suggest there would be some sort of difficulty in him obtaining that information. And he failed to provide that. And I think the record also shows, as you pointed out, that the record doesn't compel a contrary finding to the immigration judge's decision. The immigration judge, with respect to credibility finding, with regard to omissions and plausibilities, with respect to the failure to corroborate evidence, the record evidence doesn't compel a contrary conclusion. Now, there's one other factor in looking at a credibility finding, that the decisions that the IJA makes about incredibilities, things that are not credible, have to go to the heart of the claim. The fact that he forgets the house number where he used to live or something like that. Right. So let's assume solely for argument, and I'm not asking you to agree, that we were to say in our infinite wisdom that the only supportable factor on the credibility finding is the transformer explosion. And the rest of them do not go to the heart of the claim. Assuming that, what do we do then? Assuming that. Right. I would say that that is the only issue in which petition was directly harmed. That certainly goes directly to the heart of the claim. The other instance that he mentions, he was on a soccer field. There were some cars that had tinted windows there. You know, they left. There was no evidence that these were part of the drug cartels, that the they were not followed. So what the reason what I'm getting at is, is we usually get a credibility finding. And the IJ says this this petitioner was incredible. I'm not going to believe it. We've got to look up what other evidence there is. He loses. Here you've got a mixed credibility finding where the IJ only looks at certain things and said this petitioner is incredible on these matters. He loses. Now, if we only can support one of those in my example, then what do we do with the refusal to grant any relief where the rest of the findings are supported? Well, I would say, first of all, that that particular issue, because it is so central and goes to the heart of the claim, that would be enough. I would say that in response to your question, that there are other issues which warrant supporting negative credibility finding. But that even beyond that particular issue, which is central, goes to the heart of the claim and is the only direct allegation of persecution, as the immigration judge noted, even outside of credibility, which is enough to defeat the claim, he also, she also went to the merits of the case and found that, first of all, the incidents the petition talked about, the fact that he received. The lack of persecution. The lack of persecution. First, it didn't rise to the level of persecution. The petitioner received death threats and nothing more. And even with that, there was some issue. But threats alone can amount to persecution, can they not? In certain instances, we would argue that it would not be the case here, particularly when petitioner argued that his, he received threats over, you know, every 15 days, in the course of two years, that he received these threats, and yet when his wife testified, she said that she heard one phone call, but that she had not witnessed any other threats, despite petitioner's assertion that he had been getting these threats for so long. But there were death threats there. He made an allegation that there was some issue with some vehicles that had dark tinted windows. There was no proof that these were members of the drug cartel that weren't followed. The issue with the transformer, we've discussed the issues with that. So even the three issues that he proffered did not rise to the level of persecution. And then finally, I see my time is running out, he did not show that he was persecuted on account of his political opinion. In this case, he is saying that he was a customs officer, or that he had been targeted. But when he talked about what the threats were about, these were because he had seized drugs. This is Tennyson Mounts saying that if someone was a police officer, which this court has already found, that if someone was a police officer, one could not say, well, I arrested someone because they made fake IDs. They told me not to arrest them anymore, and so I'm entitled to asylum because I've been persecuted on account of a political opinion. That has not been shown here, nor has he shown that he was in a particular social group. And for those reasons, the petition should be. Well, I have a I have a technical question, if the presiding judge will indulge me. The cat claim seems to to stand on a little different footing. Even even a non-credible petitioner can be subject to torture if returned to the country of origin. So even if that petitioner can't be believed on on asylum grounds, for example, it may be that things are so bad in that country that a person of his height, his color, his background, whatever, would be subject to persecution or torture. Do you have to have a separate decision on cat even for a for a non-credible petitioner? In this instance, I would say no, Your Honor, because first, if petitioner is not credible for the reasons given, that would tend that the petitioner then would not show that he would be tortured. He is like more likely to not be tortured when he is if returns to the country. Secondly, even though as petitioner's counsel has mentioned, the drug cartels may still be in power. If petitioner has not shown one, that he is credible, or two, that what he faced was, let's say it was a prosecution, but even rose to the level of torture, then the fact that the cartels are still there, one would have to then believe that he would be targeted by those cartels and would be tortured. And it simply hasn't been that showing that after all this time, even if he were credible and were believed, and even though there was not evidence that he was tortured, then you still don't get to the fact that after all this time, he was still being tortured and was uninterested, and so he would not prevail on the torture claim. Okay. Thank you. Would you like a minute? Yes. Well, to answer the judge's last question, I would say that he would be targeted of persecution, mainly because it's not if, I mean it's a well-known fact that the cartel is very strong and has been very strong in Colombia. So because of his position that he had prior to leaving the country, I believe that there would be reasonable belief that there's a well-founded fear of persecution, or that he would be persecuted even if found not credible. Additionally, the immigration judge and the government's position on all of these little facts where they said that he was a clerk and wasn't a clerk, whether he was a custom officer or he wasn't a custom officer, it was clear in his testimony that he started as a clerk and in 1985 moved to be a custom officer. He did provide a badge and provided two affidavits on that point, and he was a custom officer. Additionally, his persecution or his threats did not start until he went into that position and found the first, seized the first drug cargo. And that's when his persecution started and his threats and his fear that something might happen to him or his family. And his wife's testimony, she testified to what she observed, not what he had gone through. So she had observed at least one of the phone calls, not all of the phone calls. So I believe that there is a fear of persecution if he had to return to Columbia. Now on the point. Pardon me, I didn't mean to interrupt you, but a question asked by Judge Nelson. I was looking over the excerpts of record for page 41, seeing the application. I don't see any application for relief under the Convention against Torture. I believe all of that was submitted in the beginning of the hearing where it's, we filed one application and request for asylum withholding and the relief. It says here, asylum pursuant to Section 208 INA, withholding of removal pursuant to Section 241 INA, voluntary departure pursuant to Section 240B INA. Am I missing something? Where is the request regarding relief under Convention against Torture? I may have jumped ahead to the wrong case. I quite agree that the immigration judge made no finding on CAT, but there may be a reason for that in that no request for such relief was presented. It could be true, Your Honor. It was, there was a different attorney at that time. So it could be true that at the time the relief for Convention against Torture was not requested, and just the asylum withholding. Thank you. Okay. Thank you very much. Thank both counsel. The case Portals, Forbes v. Gonzales is now submitted for decision. Why don't we take 10 minutes and then we'll resume and do the remaining three cases together. Thank you.
judges: T.G. Nelson, W. Fletcher, Bea